1
2
3
4

CURD, GALINDO & SMITH, L.L.P.
ALEXIS GALINDO, SBN 136643
TRACY LABRUSCIANO SBN 314300
301 East Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Telephone:  (562) 624-1177
Facsimile:  (562) 624-1178
agalindo@cgsattys.com

5
6
7
8
9

<u>Attorneys for Plaintiffs</u>
Rodrick Roman Castro, by and through his co-successors in interest,
Rodney Castro, Individually and Virginia Castro, Individually;
RAC, a Minor,  through GAL Irene Eva Coronado
JNC, a Minor through GAL Erin Chavez
DRM, a Minor  through GAL Romie Martinez

10

## UNITED STATES DISTRICT COURT

11

## EASTERN DISTRICT OF CALIFORNIA

12

13
14
15
16
17
18

RODRICK ROMAN CASTRO, DECEASED,
through his Co-Successors in Interest,
RODNEY CASTRO, and Individually as his
father and VIRGINIA CASTRO, and
individually as his mother;  RAC, a Minor,
through GAL Irene Eva Coronado; JNC, a
Minor through GAL Erin Chavez; DRM, a
Minor through GAL Romie Martinez

)
)
)
)
)
)
)
)
)
)

**COMPLAINT FOR
DAMAGES AND
DECLARATORY
RELIEF; AND DEMAND
FOR JURY TRIAL**

19

                    Plaintiffs,

)
)
)

20

vs.

)
)

21
22
23
24
25
26
27

STATE OF CALIFORNIA, CALIFORNIA
DEPARTMENT OF CORRECTIONS &
REHABILITATION, a State Agency, DEUEL
VOCATIONAL INSTITUTION, A California
State Prison; KIMBERLY  SEIBEL,
Individually and in her official capacity as
Acting Warden of DVI;
SCOTT KERNAN, Individually and in his
official capacity as Secretary of CDCR;

)
)
)
)
)
)
)
)
)
)
)
)
)

28

1
2
3
4
5
6

EDMUND G. BROWN, JR, in his individual
and official capacity as Governor;
CDCR Officer R. Adolfson #CDC-115;
Correctional Officers, Corrections Staff and
Supervisors, and DOES 1 - 10, Jointly and
Severally,

   Defendants.

)
)
)
)
)
)
)
)
)
)
)

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT AND JURY DEMAND

Plaintiffs, by and through their attorneys, CURD, GALINDO & SMITH, LLP, for their Complaint against Defendants, state as follows:

## JURISDICTION

1. This is a civil rights wrongful death/survival action arising under 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, the Americans with Disabilities Act ("ADA") – 42 U.S.C. § 12132 and 28 C.F.R. §35, et seq., the Rehabilitation Act ("RA") – 29 U.S.C. § 794, et seq., and the laws and Constitution of the State of California.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.  Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367, to hear and decide claims arising under state law.  The amount in controversy herein, excluding interest and costs, exceeds the minimum jurisdictional limit of this Court.

## INTRADISTRICT ASSIGNMENT

2. A substantial part of the events and/or omissions complained of herein occurred in the CDCR of San Joaquin, California, and this action is properly assigned to the Sacramento Division of the United States District Court for the Eastern District of California.

## PARTIES AND PROCEDURE

3. Plaintiff RODNEY CASTRO, the father of decedent, RODERICK ROMAN CASTRO and VIRGINA CASTRO, the mother of decedent brings these claims individually for wrongful death and violation of their personal rights, and as co-successors in interest for Decedent RODERICK ROMAN CASTRO pursuant to California Code of Civil Procedure §§ 377.10 et seq.

4. RAC, a Minor, is the son of decedent and brings this claim through GAL Irene Eva Coronado.

5. JNC, a Minor, is the son of decedent and brings his claim through GAL Erin Chavez

6. DRM, a Minor, is the son of decedent and brings his claim through GAL Romie Martinez

COMPLAINT AND JURY DEMAND

1

7.  Plaintiffs all reside in the CDCR of Los Angeles, State of California and all bring their claims under state and federal law.

8.  All Plaintiffs bring these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq., which provides for survival actions.  All Plaintiffs also bring claims pursuant to California Code of Civil Procedure §§ 377.60 et seq. for wrongful death. All Plaintiffs also bring claims for violations of their personal federal constitutional rights to familial association.  All Plaintiffs bring their claims individually, and Plaintiffs RODNEY CASTRO and VIRGINIA CASTRO also bring claims on behalf of Decedent RODRICK ROMAN CASTRO, on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law, and California law.  Plaintiffs also bring these claims as Private Attorneys General, to vindicate not only their rights, but others' civil rights of great importance.

9.  Defendant CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, ("CDCR") is a California state agency which operates the correctional facility at DEUEL VOCATIONAL INSTITUTE, where decedent RODRICK ROMAN CASTRO was incarcerated at the time of the events giving rise to this litigation. As such, Defendant CDCR is liable for violating the rights of Plaintiffs, including but not limited to failing to summon medical care where there is, or should be, knowledge of the immediate need for medical care, as required under California Government Codes §§ 844.6 and 845.6.and each was responsible for supervising the CDCR conduct, policies, and practices, as well as the hiring, retaining, and training of employees and agents of the CDCR, including Defendants KIMBERLY SEIBEL, certain DOE DEFENDANTS, and all of its members, agents and employees. The entity Defendants, CDCR and STATE, are sued under the 42 USC 1983, 1988, First and Eighth Amendment, Americans with Disability Act ("ADA"), Rehabilitation Act ("RA"), and state law. SCOTT KERNAN, director of CDCR, KIMBERLY SEIBEL, CDCR Officer R. Adolfson #CDC-115; and DOE DEFENDANTS are sued in their Individual Capacities. At all material times, these individual Defendants held titles and participated generally as follows in this matter:

COMPLAINT AND JURY DEMAND                                                    2

a. SCOTT KERNAN, at all relevant times herein was the Director/Secretary of the California Department of Corrections and Rehabilitation (CDCR) and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the employees of the CDCR alleged herein were committed. Defendant KERNAN was charged by law and was responsible with the administration of CDCR and was responsible for the supervision, training and hiring of persons, agents and employees working within said CDCR, including prison staff, correctional officers, MTAs, nurses, doctors, physician assistants, medical staff, and mental health staff, inclusive. Defendant KERNAN is being sued in his individual and official capacities.as Director of CDCR and highest policymaking official of CDCR, was responsible for the oversight, management, policies, procedures, provision of state inmates.  He acted in a tortious and/or constitutionally violative fashion in his screening and decisions concerning Decedent, and his handling of decedent.  He acted in concert with Defendant SEIBEL and certain DOE DEFENDANTS.

b. KIMBERLY SEIBEL was at all relevant times the Executive Director and highest policymaking official of CDCR, responsible for the oversight, management, policies, procedures, provision of inmate services, and supervision of all employees and agents at CDCR.  She acted in a tortious and/or constitutionally violative fashion in her screening and decisions concerning Decedent, and her handling of inmate services; and, she acted in concert with Defendant KERNAN and certain DOE DEFENDANTS.

c. Certain DOE DEFENDANTS were also responsible for arranging and effecting the housing of decedent at DEUEL VOCATIONAL

1   INSTITUTE, and for providing care and treatment for his serious

2   medical needs, and failed to do so.

3   10.   All or part of the wrongful acts and omissions complained of herein

4   against CDCR, SCOTT KERNAN, KIMBERLY SEIBEL, CDCR Officer R.

5   Adolfson #CDC-115 and certain DOE DEFENDANTS, on information and belief,

6   occurred in San Joaquin CDCR, California.

7   11.   Despite Plaintiffs' timely and proper requests through their counsel, and

8   without any legitimate basis, CDCR Defendants have refused to produce decedent's

9   inmate records that would have provided additional facts for this Complaint and

10   would have identified specific individuals responsible for violations of decedent's

11   rights.  The true names or capacities, whether individual, corporate, associate, or

12   otherwise, of Defendants named herein as DOES 1 through 10 are unknown to

13   Plaintiffs, who therefore sue said Defendants by said fictitious names. Plaintiffs will

14   amend this Complaint to show said Defendants' true names and capacities when the

15   same have been ascertained.  Plaintiffs are informed, believe, and thereon allege that

16   all Defendants sued herein as DOES are in some manner responsible for the acts,

17   omissions, and injuries alleged herein.

18   12.   Plaintiffs allege, on information and belief, that each of the Defendants

19   sued herein was wrongfully, deliberately indifferently, unreasonably, negligently,

20   and/or otherwise responsible in some manner for the events and happenings as

21   hereinafter described, and proximately caused injuries and damages to Plaintiffs

22   and/or Decedent.  Further, one or more DOE Defendants was at all material times

23   responsible for the hiring, training, supervision, and discipline of other defendants,

24   including both the individually named and DOE Defendants.

25   13.   Plaintiffs are informed, believe, and thereon allege that each of the

26   Defendants was at all material times an agent, servant, employee, partner, joint

27   venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing

28   the things hereinafter alleged, was acting within the course and scope of that

relationship.  Plaintiffs are further informed, believe, and thereon allege that each of

the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may hereinafter be otherwise, specifically alleged.  At all material times, each Defendant was an integral participant, jointly and fundamentally engaged in constitutionally violative, unlawful, and/or tortious activity, resulting in the deprivation of Plaintiffs' and Decedent's constitutional rights and other actionable harm.

14.     The acts and omissions of all Defendants, except those directly employed by CDCR, were at all material times pursuant to the actual customs, policies, practices, and/or procedures of the STATE OF CALIFORNIA.

15.     At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

16.     A proper and timely tort claim was presented to the STATE OF CALIFORNIA and CALIFORNIA DEPT OF CORRECTIONS and REHABILITATION on behalf of Plaintiffs and Decedent, pursuant to Government Code § 910 et seq., and this action was thereafter timely filed within all applicable statutes of limitation.

17.     This complaint may be pled in the alternative, pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure.

## GENERAL ALLEGATIONS

18.     On October 24, 2017, at approximately 4:00 pm, inmate RODRICK ROMAN CASTRO CDCR # AG2963 was found dead in his cell D-233 of the Deuel Vocational Institution (DVI) located at 23500 S. Kasson Rd., Tracy, CA.

19.     The murder was investigated by Deputy Coroner Torres and CDCR Officer TAO and assigned case number: DVI-PRG1-17-10-0252.

20.     RODRICK ROMAN CASTRO suffered 92 stab wounds to his neck and trunk in his open cell which caused his death.

21.   RODRICK ROMAN CASTRO was transferred from CDCR - Salinas Valley State Prison (SVSP) Soledad, CA to DVI. When transferred correctional officers and corrections staff and supervisors DOES 1 through 10, knew or should have known that RODRICK ROMAN CASTRO was at risk due to his cooperation in a criminal investigation.

22.   RODRICK ROMAN CASTRO was diagnosed with a mental illness and disability and medical impairments that limited and/or substantially limited his mental, medical, or physical health condition as defined under the ADA, 42 U.S.C. § 12131 (2), and under Section 504 of the Rehabilitation Act ("RA") of 1973, 29 U.S.C. § 794, 28 C.F.R. 42.540 (k); as such, RODRICK ROMAN CASTRO qualified as an individual with a mental and physical disability under California law and RODRICK ROMAN CASTRO met the essential eligibility requirements of STATE and CDCR programs to provide access to medical and mental health care services for its detainee/inmate patients in STATE prison.

23.   Correctional officers and corrections staff and supervisors DOES 1 through 10, failed to adopt and implement policies and practices of alternating the "Out Time" of inmates knowing that RODRICK ROMAN CASTRO was at risk of violence due to his cooperation in a criminal investigation.  Additionally, correctional officers and corrections staff and supervisors had prior knowledge of prior murders in open cells.

24.   Correctional officers and corrections staff and supervisors DOES 1 through 10, knew that violence occurs when housing cooperating witnesses with suspects and members of different gangs together or housing inmates affiliated with rival gangs together.

25.   Correctional officers and corrections staff and supervisors DOES 1 through 10, knew or were aware that materials from equipment and machinery

located at DVI had been removed and secreted among inmates for use as weapons and had previously confiscated similar weapons.

26. On October 23, 2017, the day before RODRICK ROMAN CASTRO was murdered. CDCR Officer R. Adolfson #CDC-115,  correctional officers, corrections staff, supervisors, and DOES 1 through 10 interviewed RODRICK ROMAN CASTRO regarding the facts and circumstances of alleged unlawful drug sales wherein RODRICK ROMAN CASTRO was a suspect and/or witness to a conspiracy involving his previous cell-mate, Oscar Garcia CDRC # j91133 while at Salinas Valley State Prison.  Present during the interview was Inmate Martinez the cellmate of RODRICK ROMAN CASTRO.  During the interview RODRICK ROMAN CASTRO intimated that Oscar Garcia was the guilty party of the drug possession and sale.

27. The following day cellmate Martinez was escorted out of the cell and within minutes RODRICK ROMAN CASTRO was murdered in the cell.

28. Unidentified corrections officers, DOES 1 through 10 were assigned to monitor the video feeds from the cameras located inside housing Units, where the murder occurred.

29. Corrections officers, DOES 1 through 10 had an obligation to monitor the video feeds to assure that inmates in the Unit did not engage in prohibited conduct, including acts of violence, that may be detrimental to prison security or to the safety of other inmates and Detention Center staff.  The surveillance cameras located inside Unit D and the monitors located in the central command center were operational on October 23, 2017 and October 24, 2017.

30. Officer R. Adolfson #CDC-115, correctional officers, corrections staff, supervisors, and DOES 1 through 10 violated policies and procedures of DVI, CDCR and Title 15 which caused  RODRICK ROMAN CASTRO death.

31.     Video recordings of Unit D from October 23, 2017 to October 24, 2017 show that the suspect inmates had begun planning and orchestrating the attack on RODRICK ROMAN CASTRO beginning in the evening hours of October 23, 2017 after the interview with Officer R. Adolfson #CDC-115. The preparation including moving contraband from one area of the Unit to another, including an item that appears to resemble the murder weapon, an icepick found at the scene.

32.     The video recording of Unit D shows the suspect inmates engaged in suspicious activity that should have triggered intervention by properly trained, supervised and diligent corrections officers. During the entire time that the criminal acts occurred no correction officer enters the Unit or cell.

33.     Officer R. Adolfson #CDC-115, correctional officers, corrections staff, supervisors, and DOES 1 through 10 placement of RODRICK ROMAN CASTRO after the October 23, 2017 interview in Unit D, Cell D-233, placed him at substantial risk of suffering serious injury and harm.

34.     Officer R. Adolfson #CDC-115, correctional officers, corrections staff, supervisors, and DOES 1 through 10 failed to reasonably institute measures to abate the risks to RODRICK ROMAN CASTRO even though those risks of serious injury and harm were high and well known and thus Officer R. Adolfson #CDC-115, correctional officers, corrections staff, supervisors, and DOES 1 through 10 conduct was objectively unreasonable and deliberate indifference.

35.     Officer R. Adolfson #CDC-115, correctional officers, corrections staff, supervisors, and DOES 1 through 10 acted with reckless disregard for the safety of inmates, and RODRICK ROMAN CASTRO by keeping him in Unit D after the October 23, 2017 interview with known affiliates of Oscar Garcia CDCR #j911133.

36.     Officer R. Adolfson #CDC-115, correctional officers, corrections staff, supervisors, and DOES 1 through 10 acted with reckless disregard for the safety of inmates when they left  RODRICK ROMAN CASTRO in Unit D after the October

23, 2017 interview with known affiliates of Oscar Garcia CDCR #j911133 and unlocked the cells for Out Time without supervision.

37.     Correctional officers, corrections staff, supervisors, and DOES 1 through 10 acted with reckless disregard for the safety of RODRICK ROMAN CASTRO and other inmates when they did not monitor the live video surveillance Unit D showing suspicious activity that should have triggered intervention by properly trained, supervised and diligent corrections officers.

38.     The supervisory Correctional officers failed to properly train the subordinate

39.     Correctional officers regarding the responsibilities associated with their respective employment positions.

40.     The supervisory Correctional officers failed to properly supervise the subordinate correctional officers to ensure that the subordinate correctional officers were properly performing their duties.

41.     The supervisory Correctional officers were responsible for the health and safety of RODRICK ROMAN CASTRO because he was in their custody, they had "stripped [him] of virtually every means of self-protection and foreclosed [his] access to outside aid." *Farmer* at 833.

42.     The supervisory Correctional officers may not delegate the constitutional duties that they owed to RODRICK ROMAN CASTRO to subordinate employees.

43.     As a result, the supervisory correctional officers' actions and inactions (deliberate indifference) were a direct cause of RODRICK ROMAN CASTRO death.

44.     As a direct and proximate cause of the supervisory correctional officers' actions, RODRICK ROMAN CASTRO suffered injury, trauma, physical pain, and a horrific death.

45.     RODRICK ROMAN CASTRO was denied the benefits of the services, programs, and activities of the STATE, and was denied accommodation for his

disabilities, which deprived him of safety, necessary care, and mental health and medical health programs and services, which would have provided planning and delivery of treatment, follow-up, and supervision. This denial of accommodation, programs, and services was the result of his disability in that he was discriminated against because he was mentally ill, at risk of assault by other inmates, and gravely disabled, in that he suffered from conditions in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs for food, clothing, or shelter and is unable to advocate for himself; and, RODRICK ROMAN CASTRO had mental impairments that substantially limited one or more of his major life activities.

46.   As a result of the acts and misconduct of the STATE, RODRICK ROMAN CASTRO died, and Plaintiffs have suffered, are now suffering, and will continue to suffer damages and injuries as alleged above. Plaintiffs have suffered loss of love and society and claim damages for the wrongful death of their son, husband, and father. Plaintiffs sustained serious and permanent injuries and are entitled to damages, penalties, costs, and attorneys' fees as set forth in the ADA.

47.   Correctional officers and corrections staff and supervisors DOES 1 through 10 failed to notify Virginia Castro of RODRICK ROMAN CASTRO before making the murder public.

48.   Correctional officers and corrections staff and supervisors DOES 1 through 10 violations of Plaintiffs' and Decedent's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act. Alternatively, separate from, and above and beyond, Correctional officers and corrections staff and supervisors' and DOES 1 through 10 attempted interference, interference with, and violation of Plaintiffs' and Decedent's rights.

49.   Based on these violations Plaintiffs request the following relief against each and every Correctional officers and corrections staff and supervisors' and DOES 1 through 10 herein, jointly and severally:

50.   The manner in which Defendants prisoned DECEDENT constituted dangerous conditions.  Defendant CDCR'S deputies and officials had a duty to protect DECEDENT from violence at the hands of other inmates.  Given DECEDENT'S having been attacked by his cellmates on prior occasions before his death (which was caused by a stabbing by a cellmate), Defendants **_knew_** that DECEDENT faced a substantial risk of serious harm, and yet they recklessly disregarded that risk by failing to take reasonable measures to abate it, instead intentionally placing him in a cell with other inmates who assaulted him.

51.   Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an *Eighth Amendment* violation when: (1) the deprivation alleged is objectively, sufficiently serious and (2) the prison officials had a sufficiently culpable state of mind, acting with deliberate indifference. Deliberate indifference entails something more than mere negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.

52.   Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation alleged is objectively, sufficiently serious and (2) the

1  prison officials had a sufficiently culpable state of mind, acting with deliberate

2  indifference.

3

4       53.    All Defendants' deliberate indifference for DECEDENT's serious

5  medical needs, their denial of necessary and appropriate medical and psychiatric care,

6  their failure to provide competent mental health care and treatment, their failure to

7  transfer DECEDENT for inpatient psychiatric hospitalization in direct violation of a

   court order and/or their failure to admit him to  appropriate hospital, their reckless

8  disregard for his high risk of being subjected to brutal assaults and beatings by other

9  inmates which resulted in his death, their intentional decision to place him in a cell

10 with a dangerous, aggressive, mentally disturbed inmate without adequate monitoring

11 of the cell, and their failure to take any reasonable available measures to abate the

12 risk to DECEDENT of being assaulted by a fellow inmate, and Defendants' other

13 tortious, unconstitutional, and/or otherwise wrongful conduct caused DECEDENT to

14 be beaten and stabbed to death in his cell.

15      54.    The CDCR Defendants failed to provide safe and adequate housing for

16 DECEDENT, with reckless disregard for his rights and safety, by intentionally

17 housing him in an environment that was unsafe for DECEDENT, who was vulnerable

18 to beatings, and then failing to take reasonable available measures to observe and

19 check on DECEDENT's welfare as required by law and regulations.  All CDCR

20 failed to have a panic button in the cell available for Decedent to use in an

21 emergency, and failed to have working video surveillance of Decedent's cell for his

22 safety, protection, and medical needs – all as required by law, regulations, and

23 generally accepted standards.  DEUEL VOCATIONAL INSTITUTE and cells in

24 which the CDCR Defendants placed DECEDENT also constituted unreasonably

25 dangerous conditions.  All CDCR DEFENDANTS were deliberately indifferent to

26 the enhanced risk and danger to Decedent from these dangerous conditions in and

   around his cell.

27

28

55.     All CDCR Defendants failed to properly and adequately monitor and care for DECEDENT's safety to abate the risk of assault, despite the fact that a reasonable officer in such circumstances would have appreciated the high risk to DECEDENT by other cellmates, his severe, untreated mental illness, his small stature, his age, and his other risk factors.

56.     At all material times and, alternatively, the actions and omissions of each Defendant were intentional, and/or wanton and/or willful, and/or conscious shocking, and/or reckless, and/or callous, and/or malicious, and/or deliberately indifferent to Plaintiffs' and Decedent's rights, and/or grossly negligent, and/or negligent.

57.     As a direct and proximate result of each Defendants' acts and/or omissions as set forth above, all Plaintiffs sustained the following injuries and damages, past and future, including, but not limited to:

a.  Wrongful death of RODRICK ROMAN CASTRO;

b.  Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support;

c.  Emotional distress from the violations of their personal Constitutional rights, including grief, sorrow, anxiety, sleeplessness, humiliation, and indignity;

d.  Loss of enjoyment of life;

e.  All other legally cognizable special and general damages;

f.  Violations of state and federal constitutional rights; and,

g.  All damages and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, California Civil Code §§ 52 and 52.1, and as otherwise allowed under California and United States statutes, codes, and common law.

58.     As a direct and proximate result of each Defendants' acts and/or omissions as set forth above, Plaintiffs RODNEY CASTRO and VIRGINIA

CASTRO, as co-Successors in Interest of Decedent RODRICK ROMAN CASTRO, sustained the following injuries and damages, past and future, including, but not limited to:

    a. Hospital and medical expenses incurred by RODRICK ROMAN CASTRO;

    b. Coroner's fees, funeral, and burial expenses;

    c. RODRICK ROMAN CASTRO'S loss of life, pursuant to federal civil rights law;

    d. RODRICK ROMAN CASTRO'S conscious pain and suffering, pursuant to federal civil rights law; and,

    e. All damages and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, California Civil Code § 52, and as otherwise allowed under California and United States statutes, codes, and common law.

**FIRST CAUSE OF ACTION**
**(42 U.S.C. § 1983)**
**PLAINTIFFS AGAINST DEFENDANTS STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, SCOTT KERNAN, KIMBERLY SEIBEL, CDCR Officer R. Adolfson #CDC-115, AND DOES 1-10**

59.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in this complaint, as though fully set forth here.

60.    By the actions and omissions described above, Defendants STATE OF CALIFORNIA, CDCR, SCOTT KERNAN, KIMBERLY SEIBEL, CDCR Officer R. Adolfson #CDC-115, and DOES 1-10, acting under the color of state law in their individual capacities, deprived RODRICK ROMAN CASTRO of the right to be free from cruel and unusual punishment which was ongoing and led to DECEDENT'S death, as secured by the Eighth Amendment, and deprived DECEDENT of the rights, privileges, and immunities secured by the Fourteenth Amendment by subjecting him,

or through their deliberate indifference, allowing others to subject him, to delay and denial of access to medical or mental health care for a serious, but treatable, medical or mental health condition, and by subjecting him, or through their reckless disregard, allowing others to subject him, to serious bodily injury and death.

61. The listed Defendants knew or must have known that DECEDENT's medical condition and medical, including psychiatric, needs were serious, but treatable, and knew or must have known that, he required access and delivery to urgently needed medical/mental health care; Defendants further had a duty to provide DECEDENT reasonable security and safe, appropriate housing and monitoring to accommodate his mental health condition and his vulnerability to abuse and assaults by other inmates.

62. The listed Defendants further knew or must have known that DECEDENT was vulnerable to injury, suffering, and attacks by other inmates, and that if reasonable measures were not taken to abate that risk, DECEDENT would suffer serious bodily injury or death.

63. Defendants STATE OF CALIFORNIA, CDCR, SCOTT KERNAN, KIMBERLY SEIBEL, CDCR Officer R. Adolfson #CDC-115, and DOES 1-10, further knew of and disregarded the risk to DECEDENT of placing him with violent inmates, in dangerous cells, without protection, and without proper and lawful monitoring for his safety. As a result of the Defendants' deliberate indifference to both DECEDENT's need for medical care and treatment and his mental condition, and as a result of Defendants' reckless disregard for DECEDENT's physical safety and well-being, Plaintiffs suffered damages and deprivation of constitutional rights, as described herein.

64. By the actions and omissions described above, the individually named Defendants violated 42 U.S.C. § 1983, depriving Plaintiffs and Decedent of the following well-settled constitutional rights that are protected by the First, Eighth, and Fourteenth Amendments to the U.S. Constitution:

a. The right to be free from deliberate indifference to DECEDENT's serious medical needs while in custody and confined in prison as a pretrial detainee/IST inmate, as secured by the Eighth and Fourteenth Amendments;

b. The right to be free from reckless disregard for the substantial risk of serious harm to DECEDENT's personal, physical safety while in custody, as secured by the Eighth and Fourteenth Amendments;

c. The rights and liberty interests, as an inmate, to freedom from incarceration and to timely, restorative treatment, as secured by the Fourteenth Amendment;

d. The right to be free from wrongful government interference with familial relationships and Plaintiffs' right to companionship, society, and support, as secured by the First and Fourteenth Amendments.

65. The listed Defendants' failure to intervene, prevent, or stop the constitutional violations by others, of which each listed Defendant knew or must have known, and when each listed Defendant was in a position to so intervene when such violations were occurring, also renders such Defendant(s) liable for these violations.

66. All Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs and Decedent of the rights described herein, knowingly, maliciously, and with deliberate indifference and conscious and reckless disregard for whether the rights and safety of Plaintiffs (Individually and on behalf of RODRICK ROMAN CASTRO) and others would be violated by their acts and/or omissions.

67. As a proximate result of the foregoing wrongful acts and/or omissions, Plaintiffs sustained injuries and damages, as set forth above. Plaintiffs are therefore entitled to general and compensatory damages in an amount to be proven at trial.

68. In committing the acts alleged above, the individually named Defendants and DOE Defendants acted maliciously, oppressively, and/or with reckless disregard for the rights, safety, and well-being of Plaintiffs and Decedent, and by reason thereof, Plaintiffs are entitled to punitive damages and penalties allowable under 42 U.S.C. § 1983, California Code of Civil Procedure §§ 377.20 et seq, and other state

1  and federal law against these individual Defendants; no punitive damages are sought

2  directly against the municipal Defendants.

3      69.    Plaintiff is also entitled to reasonable costs and attorney's fees under 42

4  U.S.C. § 1988 and other applicable California codes and laws.

**SECOND CAUSE OF ACTION**
**(42 U.S.C. § 1983 – *Monell* and Supervisory Liability)**
**AGAINST DEFENDANTS CDCR , SCOTT KERNAN, KIMBERLY  SEIBEL**
**and DOES 1-10**

9      70.    Plaintiffs re-allege and incorporate by reference each and every

10 allegation contained in this complaint, as though fully set forth herein.

11     71.    As supervisors, Defendants CDCR EXECUTIVE DIRECTOR SCOTT

12 KERNAN,  WARDEN DIRECTOR KIMBERLY SEIBEL, and DOES 1-10, despite

13 the fact that the each knew or must have known that Decedent's serious medical

14 needs were not being lawfully addressed, and that Defendants SCOTT KERNAN,

15 WARDEN KIMBERLY SEIBEL  further knew or must have known that Decedent

16 was at grave risk of harm from other inmates for the reasons described herein, each

17 failed to properly supervise and train other Defendants, hospital staff, and prison staff

18 who were responsible to properly address Decedent's medical needs and safety, and

19 each permitted and failed to prevent the unconstitutional acts of other Defendants and

20 individuals under their supervision and control, with deliberate indifference to the

21 rights and serious medical needs of DECEDENT.  Each of these supervising

22 Defendants either directed his or her subordinates in conduct that violated Decedent's

23 rights, OR set in motion a series of acts and omissions by his or her subordinates that

24 the supervisor knew or reasonably should have known would deprive Decedent of

25 rights, OR knew his or her subordinates were engaging in acts likely to deprive

26 Decedent of rights and failed to act to prevent his or her subordinate from engaging in

27 such conduct, OR disregarded the consequence of a known or obvious training

28 deficiency that he or she must have known would cause subordinates to violate

Decedent's rights, and in fact did cause the violation of Decedent's rights.  (See, Ninth Circuit Model Civil Jury Instruction 9.4).  Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of Decedents' rights.

72.     Plaintiffs allege, upon information and belief, the unconstitutional actions and/or omissions of the individually named CDCR Defendants were pursuant to the following customs, policies, practices and/or procedures of the CDCR, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officials for the CDCR and its correctional staff including, but not limited to, Defendants CDCR Officer R. Adolfson #CDC-115 and DOES 1-10:

a.  To deny inmates at the CDCR'S prison access to appropriate, competent, and necessary care for serious medical and psychiatric needs, including, as described herein, their failure to provide appropriate and competent medical care, and their failure to transfer DECEDENT for inpatient psychiatric hospitalization;

b.  To fail to properly classify, house, and/or monitor inmates suffering from mental health disabilities, including placement in separate cells with lawful in-person monitoring, with adequate video and audio monitoring, and with legally required cell alarms, including failing to consider in any way the clear and obvious danger of placing inmates in cells with dangerous and violent inmates and without the frequent, logged observation required by law;

c.  To fail to institute proper procedures and training to coordinate inmate assessment, placement, protect inmates from assault, transfer to CDCR or other psychiatric facilities, and care with the prison physician, prison psychiatrist, court, and prison corrections staff where there was an obvious need for such to prevent transfer debacles of the type that happened here;

d.  To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures for handling, housing, and caring for mentally ill and/or emotionally disturbed inmates at the CDCR Prison, including alternatives to placing such ill and disturbed inmates

with other ill and disturbed inmates without adequate monitoring and protection resulting in serious bodily injury and death;

e.  To fail to provide timely restorative treatment to IST criminal defendants;

f.  To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (e) above, when the need for such was obvious, with deliberate indifference to the rights and safety of Plaintiffs, Decedent, and the public, and in the face of an obvious need for such policies, procedures, and training programs.

73.   In the alternative, upon information and belief, Defendant CDCR may have instituted policies or training addressing some or all the topics listed above, but with deliberate indifference to citizens' rights, failed to properly oversee, enforce, and/or properly carry out such policies and/or training.

74.   The above-described customs, policies, practices, and/or procedures of the CDCR were a moving force and/or a proximate cause of the deprivations of Plaintiffs' and Decedent's constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above in Count 1.

75.   The unconstitutional actions and/or omissions of the individually named Defendants, DOES 1-10, other CDCR personnel, were approved, tolerated, and/or ratified by policy making officers for the CDCR , including, but not limited to, KIMBERLY SEIBEL.  Plaintiffs are informed and believe, and thereupon allege, the details of this incident have been revealed to the authorized policy makers within the CDCR, and that such policymakers have direct knowledge of the fact that RODRICK ROMAN CASTRO was unlawfully denied protection from violent assaults, necessary care for his serious medical needs, and timely restorative treatment due to their and their subordinates' misconduct and violations of Decedents' rights. Notwithstanding this knowledge, the authorized policymakers within the CDCR had approved of the individually named Defendants' and DOES 1-10s' conduct and

decisions in this matter to the extent such individuals were under their supervision and oversight, and have made a deliberate, conscious and affirmative choice to endorse and ratify such conduct and decisions, and the basis for them, which resulted in the death of RODRICK ROMAN CASTRO. By so doing, the authorized policymakers within the CDCR had shown affirmative agreement with the conduct of individual Defendants and other employees/agents under their supervision, and have ratified the unconstitutional acts of these individual Defendants, employees, and agents.

76.     The aforementioned choices, customs, policies, practices, and procedures; the failure to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and, the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants CDCR, SEIBEL, and DOES 1-10 were a moving force and/or a proximate cause of the deprivations of Plaintiffs' and Decedent's clearly established and well-settled constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above in ¶ 94.

77.     As a direct and proximate result of the foregoing unconstitutional actions, omissions, customs, polices, practices, and/or procedures of Defendant CDCR , SEIBEL, and DOES 1-10, or the lack of adequacy thereof, Plaintiffs sustained serious and permanent injuries and damages and are entitled to damages, penalties, costs, and attorneys' fees, as set forth above, and punitive damages against Defendants SEIBEL, and DOES 1-10, in their individual capacities.

### THIRD CAUSE OF ACTION
### (VIOLATION OF ADA (Title II and III) and REHABILITATION ACT)
### (42 U.S.C. § 12132 &29 U.S.C. § 794)
### PLAINTIFFS AGAINST DEFENDANT
### STATE OF CALIFORNIA; CDCR

78.     Plaintiffs re-allege and incorporates by reference the allegations contained in this complaint, as though fully set forth herein.

79.     At all material  DECEDENT was a "qualified individual" with a mental illness and disability and medical impairments that limited and/or substantially limited his ability to care for himself and control his mental, medical, or physical health condition as defined under the ADA, 42 U.S.C. § 12131 (2), and under Section 504 of the Rehabilitation Act ("RA") of 1973, 29 U.S.C. § 794, 28 C.F.R. 42.540 (k); as such, DECEDENT qualified as an individual with a mental and physical disability under California law and DECEDENT met the essential eligibility requirements of STATE and CDCR programs to provide access to medical and mental health care services for its detainee/inmate patients in CDCR's prisons while they are in custody.

80.     Defendants STATE, CDCR, and CDCR's prison and mental health services are places of public accommodation and are covered entities for purposes of enforcement of the ADA, 42 U.S.C. §12181 (7)(F), and the Rehabilitation Act, 29 U.S.C. § 794, as explicated by the regulations promulgated under each of these laws. Further, on information and belief, Defendant STATE and Defendant CDCR and its prison receive federal assistance and funds.

81.     Defendants STATE OF CALIFORNIA and CDCR, as a state, local government, and/or department or agency thereof, both fall within the definition of "program or activity" covered by the Rehabilitation Act, 29 U.S.C. Section 794(b). STATE and CDCR are also within the mandate of the RA that no person with a disability may be "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity." 29 U.S.C. § 794.

82.     Under the ADA, Defendants STATE and CDCR are mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities . . . " and to ensure "that the personal and civil rights" of persons who are receiving services under its aegis are protected.

83.     Congress enacted the ADA upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that

such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101 (a)(2).

84.     Defendants STATE and CDCR are mandated under the ADA not to discriminate against any qualified individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182 (a).

85.     The ADA, 42 U.S.C. § 12182(b)(1)(A)(iii), provides in pertinent part that: "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual licensing, or other arrangements, with a good, service, facility, privilege, advantage, or accommodation *that is different or separate* from that provided to other individuals." *Id*. (emphasis added).

86.     Defendants STATE OF CALIFORNIA and CDCR violated the ADA, RA, and discriminated against DECEDENT and Plaintiffs, violating their ADA, RA, and state protected rights by: (a) creating and maintaining a number of programs and services to protect the mentally disabled that operate in conjunction with the STATE's designated mental health hospitals such as CDCR and facilities for persons who qualify under Penal Code § 1370 (a)(2) or Welfare and Institutions Code 5150; and (b) STATE failing to provide services or to accommodate DECEDENT with access to the programs and services of CDCR or State designated mental health hospitals and facilities for persons who qualify for access and services under Penal Code § 1370 (a)(2) or Welfare and Institutions Code 5150; (c) CDCR failing to provide services or accommodate DECEDENT as indicated and with appropriate classification, housing, and monitoring for a person in their sole and exclusive custody who they knew was mentally disabled, at risk for assault, and was found by the Superior Court to be mentally incompetent; (d) CDCR failing to provide reasonable accommodations to people in custody with mental disabilities at their hospitals, clinics, and prisons and, instead, providing a quality of care and service that is different, separate, inferior, and worse than the service provided to other

individuals with the same disabilities; (e) STATE and CDCR denying DECEDENT, a qualified individual with a disability, the opportunity to participate in or benefit from the aid, benefit, or services of the STATE and CDCR, in violation of 28 C.F.R. § 35.130(b)(1)(i); (f) by reason of Decedent's mental disabilities, STATE and CDCR Defendants did not afford him an opportunity to participate in or benefit from the aid, benefits, and services that are equal to those afforded to other, non-disabled individuals by Defendants, in violation of 28 C.F.R. § 35.130(b)(1)(ii); (g) on the basis of DECEDENT'S disability, STATE and CDCR Defendants failed to provide him an aid, benefit, or service that was as effective in affording equal opportunity to obtain the same result, to gain the same benefit, and to reach the same level of achievement as provided to other individuals in the same situation, in violation of 28 C.F.R. §35.130(b)(1)(iii); (g) STATE and CDCR limited DECEDENT, a qualified individual with a disability, in the enjoyment of rights, privileges, advantages, or opportunities enjoyed by others receiving the aid, benefit, or service of which DECEDENT was denied, in violation of 28 C.F.R. §35.130(b)(1)(vii).  Further, by refusing or obstructing Decedent's admission to a CDCR hospital or another qualified hospital in violation of the court order finding that his serious medical needs required such treatment to be provided in a timely manner, Defendants STATE and CDCR deprived him of *all* court-ordered and necessary medical treatment for his serious medical needs.

87.    DECEDENT was denied the benefits of the services, programs, and activities of the STATE and CDCR, and was denied accommodation for his disabilities, which deprived him of safety, necessary care, and mental health and medical health programs and services, which would have provided planning and delivery of treatment, follow-up, and supervision.  This denial of accommodation, programs, and services was the result of his disability in that he was discriminated against because he was mentally ill, at risk of assault by other inmates, and gravely disabled, in that he suffered from conditions in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs for food, clothing, or

shelter and is unable to advocate for himself; and, RODRICK ROMAN CASTRO had mental impairments that substantially limited one or more of his major life activities.

88.     As a result of the acts and misconduct of the Defendants STATE and CDCR complained of herein, DECEDENT died, and Plaintiffs have suffered, are now suffering, and will continue to suffer damages and injuries as alleged above. Plaintiffs has suffered loss of love and society and claim damages for the wrongful death of their son and father in an amount not yet ascertained, but to be proven. Plaintiffs sustained serious and permanent injuries and are entitled to damages, penalties, costs, and attorneys' fees as set forth in the ADA and RA above.

## FOURTH CAUSE OF ACTION
### (VIOLATION OF CIVIL CODE § 52.1 (b))
### PLAINTIFF AGAINST DEFENDANTS SCOTT KERNAN; KIMBERLY SEIBEL; CDCR; CDCR Officer R. Adolfson #CDC-115,; and DOES 1-10

89.     Plaintiff re-alleges and incorporates by reference the allegations contained in this complaint, as though fully set forth herein.

90.     By their acts, omissions, customs, and policies, Defendants KERNAN, SEIBEL, CDCR, CDCR Officer R. Adolfson #CDC-115, and DOES 1-10 acting in concert/conspiracy, as described above, and with threat, intimidation, and/or coercion, violated Plaintiff's and Decedent's rights under California Civil Code § 52.1 and the following clearly established rights under the United States Constitution and California Constitution and law:

    a.  Decedent's right to be free from cruel and unusual punishment as a prison inmate, as secured by the Eighth and Fourteenth Amendments to the United States Constitution and the California Constitution, Article 1, Sections 7 and 13;

    b.  Decedent's right to be free from deliberate indifference to his serious medical needs as a prison inmate, as secured by the Eighth and

Fourteenth Amendments to the United States Constitution and the California Constitution, Article 1, Sections 7 and 13;

c. Decedent's right to be free from reckless disregard for protection from brutal assaults by other inmates resulting in serious bodily injury and death, as secured by the Eighth and Fourteenth Amendments to the United States Constitution and the California Constitution, Article 1, Sections 7 and 13;

d. Plaintiffs' right to be free from wrongful government interference with familial relationships and Plaintiffs' right to companionship, society, and support of each other, as secured by the First and Fourteenth Amendments;

e. Decedent's right to immediate medical care as required by California Government Code § 845.6.

91. Defendants' violations of Plaintiffs' and Decedent's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act. Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Plaintiffs' and Decedent's rights, Defendants violated Plaintiffs' and Decedent's rights by the following conduct, among other conduct, constituting threat, intimidation, or coercion:

a. Intentionally and with deliberate indifference, depriving and/or preventing DECEDENT from receiving necessary, life-saving medical and/or psychiatric care and treatment;

b. Intentionally and with deliberate indifference, ordering, causing, and/or continuing DECEDENT's punitive housing in a segregated and/or disciplinary cell, under conditions of solitary confinement for long stretches of time, without necessary, life-saving medical and/or psychiatric care and treatment;

c. Intentionally and with deliberate indifference, causing DECEDENT to languish in prison without necessary medical/psychiatric/pharmacological care, or even the required treatment plan, when he was obviously unable to care for his own needs, and after a court had determined he was unable to care for his own needs and was in grave danger;

d.  Intentionally and with deliberate indifference, doing and/or permitting subparagraphs (a) – (d) when it was also obvious that in doing so, Decedent's life was likely to end needlessly, and Plaintiffs' rights also would be violated

92.     The threat, intimidation, and coercion described herein were not necessary or inherent to any legitimate and lawful law enforcement activity.

93.     Further, all of Defendants' violations of duties and rights, and coercive conduct described herein, were volitional acts; none was accidental or merely negligent.  Further, each Defendant violated Plaintiffs' and Decedent's rights with the specific intent and purpose to deprive them of their enjoyment of those rights and of the interests protected by those rights.

94.     To the extent this claim is based on a violation of Decedent's rights, it is asserted as a survival claim. To the extent that the violations of rights were done to Plaintiffs, it is asserted as a personal claim. To the extent the violations were done to both Decedent and Plaintiffs, it is asserted as both.

95.     Defendant CDCR is vicariously liable pursuant to Cal. Gov. Code section 815.2.

96.     As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiffs' and Decedent's rights under the United States and California Constitutions and law, Plaintiffs sustained injuries and damages, and against each Defendant named in this Count is entitled to relief as set forth above, and punitive damages against all individual Defendants, including all damages and penalties allowed by California Civil Code §§ 52 and 52.1 and California law, three times actual damages, and attorneys' fees.

//
//
//
//
//

**FIFTH CAUSE OF ACTION**
**(VIOLATION OF CALIFORNIA GOVERNMENT CODE § 845.6)**
**PLAINTIFF AGAINST DEFENDANTS CDCR, KERNAN, SEIBEL,**
**CDCR Officer R. Adolfson #CDC-115 and DOES 1-10**

97.     Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

98.     DEFENDANTS CDCR, KERNAN, SEIBEL, CDCR Officer R. Adolfson #CDC-115, and DOES 1-10 knew or had reason to know that RODRICK ROMAN CASTRO was in need of immediate and a higher level medical and psychiatric care, treatment, and observation and monitoring, that he required special housing and security for his own safety and well-being, and each Defendant failed to take reasonable action to summon and/or to provide him access to such medical care and treatment and/or provide him housing accommodations necessary for him under such circumstances. Each such individual Defendant, employed by and acting within the course and scope of his or her employment with Defendant CDCR knowing and/or having reasons to know this, failed to take reasonable action to summon and/or provide DECEDENT access to such care, treatment, and medically appropriate housing in violation of California Government Code § 845.6.

99.     As a proximate cause of the aforementioned acts and omissions of – and attributable to the CDCR under Government Code sections 845.6 and 815.2 to – all Defendants, Plaintiffs were injured as set forth above and are entitled to all damages allowable under California law. Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees as set forth above.

**SIXTH CAUSE OF ACTION**
**(NEGLIGENCE)**
**PLAINTIFF AGAINST DEFENDANTS CDCR, KERNAN, CDCR Officer R.**
**Adolfson #CDC-115, SEIBEL, DOES 1-10**

100.     Plaintiffs re-allege and incorporates by reference the allegations contained in this complaint, as though fully set forth herein.

COMPLAINT AND JURY DEMAND

101.   At all material times, Defendants KERNAN, CDCR Officer R. Adolfson #CDC-115, SEIBEL, DOES 1-10, and CDCR owed DECEDENT the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

102.   At all material times, each Defendant owed DECEDENT the duty to act with reasonable care.

103.   These general duties of reasonable care and due care owed to DECEDENT by all Defendants include, but are not limited, to the following specific obligations:

   a.   To provide safe and appropriate prison custody for RODRICK ROMAN CASTRO, including reasonable classification, monitoring, and housing, including placing him in an adequately monitored cell away from violent and combative inmates;

   b.   To obey Court Orders for the care and safety of inmates, such as RODRICK ROMAN CASTRO;

   c.   To summon necessary and appropriate medical care for DECEDENT;

   d.   To use generally accepted law enforcement and prison procedures that are reasonable and appropriate for Plaintiffs' status as a mentally ill and/or emotionally disturbed person;

   e.   To refrain from abusing their authority granted to them by law; and,

   f.   To refrain from violating Plaintiffs' and Decedent's rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

104.   By the acts and omissions set forth more fully in the paragraphs above, Defendants acted negligently and breached their duty of due care owed to DECEDENT, which foreseeably resulted in the suffering of damages by DECEDENT and Plaintiffs.

105.   Defendants, through their acts and omissions, breached the aforementioned duties owed to DECEDENT and Plaintiffs.

106.   Defendant CDCR is vicariously liable pursuant to California Government Code section 815.2.

107.   As a proximate result of Defendants' negligence, Plaintiffs sustained injuries and damages, and against each listed Defendant in this Count is entitled to the relief described above. Plaintiffs also seek punitive damages against such individual Defendants in their individual capacities. Plaintiffs do not seek punitive damages against the municipal Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief against each and every Defendant herein, jointly and severally:

1. Declaratory relief, finding that Defendants violated Plaintiffs' and Decedent's rights, to serve the purposes of 42 U.S.C. § 1983, 42 U.S.C. § 12132, 29 U.S.C. § 794, and Cal. Civil Code §§ 52 and 52.1, including for vindication of those rights as "Private Attorneys' General," elucidation of those rights for the courts, the public, and government officials, and to deter similar wronging by the Defendants and other officials;

2. Compensatory damages in an amount according to proof, which is fair, just, and reasonable;

3. Punitive damages under 42 U.S.C. § 1983, federal law, and California law, in an amount according to proof and which is fair, just, and reasonable against all Defendants except the municipal Defendants;

4. All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; the ADA; the RA; California Civil Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California and/or federal law;

5. For such other and further relief as the Court deems just and proper.

//

## **JURY TRIAL DEMAND**

Plaintiffs hereby respectfully demand a jury trial in this action, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: July 23, 2018                    CURD, GALINDO & SMITH LLP


                                        */s/ Alexis Galindo*
                                        ALEXIS GALINDO
                                        Attorneys for Plaintiff