UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY CASTRO, Individually and as Co-Successors in Interest, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>Defendant. | No. 2:18-CV-02115-KJM-EFB<br><br>ORDER |

The parents and children of plaintiffs' decedent Rodrick Roman Castro, as individuals and co-successors in interest, allege officers with the California Department of Corrections and Rehabilitation ("CDCR") at Deuel Vocational Institute failed to reasonably monitor and protect Rodrick from other inmates, resulting in his murder. The parent plaintiffs are Rodney Castro and Virginia Castro. The minor children are R.A.C, through guardian ad litem Irene Coronado; J.N.C., through guardian ad litem Erin Chavez; M.C., through guardian ad litem Claudia Silva; and D.R.M., through guardian ad litem Romie Martinez. Plaintiffs brought this action against the State of California, CDCR, Scott Kernan, Kimberly Seibel and CDCR Officer R. Adolfson for violations of various federal and state laws. D.R.M. later dismissed his claims. The parties have agreed to settle their claims. The minor plaintiffs now move for court approval of the
/////

1

agreements. The motions are unopposed. After hearing the motion and for the reasons set forth below, the court GRANTS the motions.

I. FACTUAL BACKGROUND

R.A.C., J.N.C. and M.C. are the minor children of Rodrick Roman Castro, referred to here as "Rodrick" to distinguish him from other family members. Second Am. Compl. ("SAC") ¶¶ 4-6, ECF No. 26. Rodrick was a prisoner at Deuel Vocational Institute ("DVI"), a CDCR correctional facility located in Tracy, California. *Id.* ¶¶ 9, 27. Rodrick allegedly suffered from mental illness and disability that qualified him for disability medical and mental health services in the state prison system. *Id.* ¶ 28. The complaint alleges that when Rodrick was transferred from Salinas Valley State Prison to DVI, correctional officers and staff knew or should have known he was at risk of violence due to his cooperation in a criminal investigation. *Id.* ¶¶ 29-30. On October 23, 2017, CDCR Officer R. Adolfson and other correctional staff interviewed Rodrick about alleged drug sales by Rodrick's former cell-mate at Salinas Valley State Prison. *Id.* ¶ 32. Rodrick's cellmate, inmate Martinez, was present at the interview. *Id.* The following day, Martinez was escorted out of the cell, leaving the cell open and Rodrick alone inside. Within minutes, Rodrick was stabbed to death by other inmates. *Id.* ¶ 33.

The complaint alleges CDCR failed to adopt and implement policies and practices to mitigate the risk to inmates who cooperate in criminal investigations. *Id*. ¶¶ 29, 40. The complaint further alleges CDCR officers had an obligation to monitor surveillance cameras that showed suspect inmates planning and orchestrating the attack the night of October 23, 2017, but failed to do so. *Id.* ¶¶ 34-38. Supervisory correctional officers failed to ensure their subordinates were properly performing their duties. *Id.* ¶¶ 44-49. Plaintiffs allege these supervisory failures constitute the denial of disability accommodations to Rodrick. *Id.* ¶ 51. They also allege the supervisory failures constitute deliberate indifference in violation of the Eighth Amendment. *Id.* ¶¶ 57-58.

Rodrick's parents, Rodney and Virginia, and his minor children R.A.C., J.N.C. and D.R.M., through their respective guardians ad litem, brought suit on August 1, 2018, alleging two separate violations of 42 U.S.C. § 1983 (deliberate indifference and supervisory liability), a

2

violation of the ADA, a violation of the Tom Bane Civil Rights Act (Cal. Civ. Code section 52.1), failure of prison officials to provide medical care in violation of California Government Code section 845.6 and negligence. Compl., ECF No. 1. Plaintiffs amended their complaint, dropping the Bane Act claim. *See* SAC. Minor plaintiff D.R.M. stipulated to dismissal of all claims. Stip. to Dismiss, ECF No. 32. The remaining parties stipulated to the joinder of an additional minor plaintiff, M.C. Stip. to Joinder, ECF No. 46. Now, the parties represent that the case has settled and plaintiffs have filed this motion for approval of a minor's compromise.

II. <u>LEGAL STANDARD</u>

District courts have a duty to protect the interests of minor or incompetent litigants. *See* Fed. R. Civ. P. 17(c)(2) (requiring a district to "appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action"). This special duty requires a district court to "conduct its own inquiry to determine whether the settlement serves the best interests of the minor." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)); *see also* E.D. Cal. L. R. 202(b) ("No claim by or against a minor or incompetent person may be settled or compromised absent an order by the Court approving the settlement or compromise.").

The Ninth Circuit instructs district courts to "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1181–82. This requires the court to "evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard." *Id.* at 1182.

III. <u>DISCUSSION</u>

The parties agreed to settle the claims of Rodney and Virginia Castro and R.A.C., J.N.C. and M.C. for a total of $1,900,000.00. Mot., Ex. A, ECF No. 52-2. The minors' portion of the settlement is $1,500,000.00. *Id*.

/////

3

### R.A.C.

R.A.C.'s portion of the settlement, before attorneys' fees, is $600,000.00. Mot., Decl. of Alexis Galindo ("Galindo Decl.") ¶ 11, ECF No. 52-1. The law firm of Curd, Galindo & Smith, LLP is requesting attorneys' fees of 25 percent. *Id.* After these fees are deducted, R.A.C. is due $450,000.00. Mot., Ex. A at 2, ECF No. 52-2. The lump sum of $415,000.00 will be annuitized through USAA Annuity Services Corporation, to be disbursed tax-free to R.A.C. between the ages of 18 and 30. Mot., Ex. B, ECF No. 52-3. The remaining $35,000 will be distributed to his guardian ad litem, Irene Coronado, as custodian for R.A.C. under the California Uniform Transfer to Minors Act ("UTMA"). Galindo Decl. ¶ 17.

Irene Coronado, R.A.C.'s mother, would use some of the $35,000.00 custodial payment to pay for R.A.C.'s dental and orthodontic bills not covered by insurance. R.A.C. has been diagnosed with epilepsy; the settlement will also pay portions of his neurological medical bills not covered by insurance. Another portion of the settlement would be used for R.A.C. to go to summer basketball camp. Declaration of Irene Coronado ("Coronado Decl."), Ex. F, ECF No. 52-7. The larger annuitized portion of the settlement is intended to provide funding for college, housing expenses, graduation gifts, funds for business development on college graduation, and eventually, funds for the purchase of a first home. Ex. B; Coronado Decl.

### J.N.C.

J.N.C.'s portion of the settlement mirrors that of R.A.C. He is due a gross settlement of $600,000.00, less $150,000.00 in attorneys' fees. Galindo Decl. ¶ 12; Mot. Ex. A at 2. $400,000.00 of the settlement will be annuitized through USAA. Mot. Ex. C, ECF No. 52-4. The remaining $50,000.00 will be paid to Erin Chavez as custodian for J.N.C. under the California UTMA. Galindo Decl. ¶ 17.

J.N.C.'s mother, Erin Chavez, will use the $50,000.00 custodial payment to pay for a reliable vehicle to help her secure and retain employment to provide for J.N.C., who she raises as a single mother. Declaration of Erin Chavez ("Chavez Decl."), Ex. F, ECF No. 52-7. J.N.C. suffers from depression since the death of his father, and Ms. Chavez will also use the custodial fund to pay for counseling not covered by insurance. Chavez Decl. J.N.C.'s structured settlement will pay

for his college expenses, as well as a lump sum on graduation and tax-free payments until age 30. Ex. C, ECF No. 52-4; Chavez Decl.

### M.C.

M.C.'s portion of the settlement is $300,000.00, less $37,500.00 in attorneys' fees; her total after attorneys' fees is $262,500.00. Galindo Decl. ¶¶ 13, 22. A lump sum of $247,500.00 would be annuitized through USAA and the remaining $15,000.00 would be paid to her mother, Claudia Silva, to pay expenses for a travelling violin program and private tutoring. Declaration of Claudia Silva ("Silva Decl."), Ex. F, ECF No. 52-7. M.C. had no relationship with her father, and thus receives less than the other minor plaintiffs. Galindo Decl. ¶ 6; Silva Decl.

A. Fair and Reasonable

The court finds the proposed settlement is fair and reasonable to all minor plaintiffs. The minor plaintiffs' injuries are the emotional damage wrought by the loss of a father, as well as the hurt and indignity of the alleged disregard of their father's rights. M.C.'s settlement is less than the other two minor plaintiffs, but this is reasonable given that she was born two months before her father was incarcerated and had no relationship with him. Silva Decl.

If the matter were to proceed to trial, plaintiffs would encounter several obstacles to recovery. Defendants assert sovereign immunity bars several of plaintiffs' causes of action. Def. Mot. to Dismiss at 7-8, ECF No. 36-1. The plaintiffs would need to successfully litigate these issues. There are also issues of causation and damages in the case, such as the depth of the relationship between the decedent and his children and the degree to which his absence in their lives was caused by his death in prison, as opposed to his incarceration alone.

Plaintiffs' counsel notes the risk inherent in litigating civil rights actions. Galindo Decl. ¶¶ 15-16. She asserts jurors are frequently biased against decedent prisoners, particularly if prejudicial information about the decedent's criminal history or drug use is admitted at trial. *Id.* Litigating such cases is expensive and they rarely settle for more than nuisance value. *Id.* Plaintiffs' counsel's comments ring true in light of similar cases, reviewed below.

In *Shaw v. County of San Joaquin, et al.*, Verdella Shaw sued San Joaquin County for the wrongful death of her son Maurice, alleging deliberate indifference to his mental illness

caused him to commit suicide in the San Joaquin County Jail. *Shaw v. County of San Joaquin, et al.*, 2:01-cv-01668-MCE-PAN, 2006 Jury Verdicts LEXIS 51423 (E.D. Cal. Sept. 8, 2011). The prison psychiatrist, Robert Hart, allegedly never personally consulted with or treated Maurice, reviewing his medical records from afar. *Id.* At trial, the jury awarded a total verdict of $858,200.00, and attorneys' fees of $1,127,935.00. *Shaw*, 2:01-cv-01668-MCE-PAN, ECF Nos. 292, 312, 363.

*Shaw*'s award of attorneys' fees demonstrates the degree of time and expense required to litigate a deliberate indifference case. It also demonstrates that the amount of settlement here is proportional to a roughly analogous case.

In *Estate of Gautier v. Hickman, et al.*, the mother and minor son of Folsom State Prison inmate Jeffrey Gautier sued under § 1983 for prison medical staff's alleged deliberate indifference to Mr. Gautier's diabetes. *Estate of Gautier v. Hickman, et al.*, No. 2:07-CV-00390-GGH, 2008 LEXIS 49794 (E.D. Cal. June 27, 2008). Gautier suffered multiple diabetic seizures and swung in and out of a hypoglycemic coma in prison for several months in 2005 and into 2006 before he died. The minor son's gross recovery on settlement was $100,000, with $25,000 due to his attorney. *Estate of Gautier*, No. 2:07-CV-00390-GGH, ECF No. 89. The magistrate judge who reviewed the settlement found the settlement fair and reasonable, given that the plaintiff's decedent had been noncompliant with his diabetes treatment regimen on his own, the likelihood of vigorous dispute about the propriety of decedent's transfer to the state medical facility, and the fact that the decedent would have been separated from his son by incarceration in any event. *Estate of Gautier*, Mem. on Minor's Settlement, ECF No. 91.

The minor plaintiffs are recovering much more in this case than the minor plaintiff in *Estate of Gautier*. Their problems of causation and damages have clear analogs in this case: in both cases, the plaintiffs would have to prove the condition or event that was the immediate cause of the decedent's death would not have happened but for the failure of prison officials to intervene. In both cases, the minor plaintiffs would have to prove a sufficiently close relationship with their deceased parent, notwithstanding their incarceration, to show that their loss was compensable.

/////

6

Here, it appears the minor plaintiffs' settlement discounts far less than did the settlement in *Gautier* for these factors.

The proposed disposition of the settlement proceeds is fair as well. The structured settlement annuities provide a reasonable rate of return and preserve most of the proceeds to fund major life expenses such as college tuition. J.N.C.'s mother has asked for $15,000 of his immediate payment to go toward buying her a reliable vehicle so she can get a full-time job. Chavez Decl. Because she must support J.N.C. for several more years, the court finds this is a reasonable expense. The parents of all three minors will use the immediate proceeds of the settlement to pay for health care, educational and extracurricular activity expenses incident to raising each child.

IV. CONCLUSION

The court finds the proposed settlement serves the best interests of each minor plaintiff. Accordingly, the court GRANTS the motion to approve the settlement agreement, ECF No. 52, and ORDERS as follows:

1. The settlement for the benefit of the minors R.A.C., J.N.C., and M.C. against defendants in the sum of $1,500,000.00, less attorneys' fees, is approved. defendants, through counsel, shall prepare and deliver drafts for the partial settlement proceeds in accordance with paragraphs 3 and 4 of the Settlement and Agreement and Release, payable as follows:

2. Defendants shall cause to be issued a settlement check in the amount of $415,000.00 made payable to USAA Annuity Service Corporation, on the account of minor plaintiff R.A.C. to be used to fund a structured settlement annuity for R.A.C. (as provided in "Exhibit B", ECF No. 52-3), to be disbursed to R.A.C. tax-free between the ages of 18 and 30 years old in a total guaranteed amount of $551,268.48, including the $35,000.00. Defendants or their insurer will execute a Qualified Assignment and Release document to perfect the assignment of the periodic payment obligation.

3. Defendants shall cause to be issued a settlement check in the amount of $35,000.00 made under the California Uniform Transfers to Minors Act,

California Probate Code § 3900 et seq. ("UTMA"), with the following designation and made payable to: "IRENE CORONADO, as custodian for R.A.C. under the California Uniform Transfers to Minors Act." Ms. Coronado shall only use UTMA funds for R.A.C.'s benefit before he reaches age 18, at which time any remaining funds will vest in R.A.C.'s control and absolute ownership.

4. Defendants shall cause to be issued a settlement check in the amount of $400,000.00 made payable to USAA Annuity Services Corporation, on the account of minor plaintiff J.N.C. to be used to fund a structured settlement annuity for J.N.C. (as provided in "Exhibit C", ECF No. 52-4), to be disbursed to J.N.C. tax-free between the ages of 18 and 30 years old in a total guaranteed amount of $620,981.40 including the $50,000.00. Defendants or their insurer will execute a Qualified Assignment and Release document to perfect the assignment of the periodic payment obligation.

5. Defendants shall cause to be issued a settlement check in the amount of $50,000.00 be made under the California Uniform Transfers to Minors Act, California Probate Code §3900 et seq. ("UTMA"), with the following designation and made payable to: "ERIN CHAVEZ, as custodian for J.N.C. under the California Uniform Transfers to Minors Act." Ms. Chavez shall only use UTMA funds for J.N.C.'s benefit before he reaches age 18, at which time any remaining funds will vest in J.N.C.'s control and absolute ownership.

6. Defendants shall cause to be issued a settlement check in the amount of $247,500.00 made payable to USAA Annuity Services Corporation, on the account of minor plaintiff M.C. to be used to fund a structured settlement annuity for M.C. (as provided in "Exhibit D," ECF No. 52-5), to be disbursed to M.C. tax-free between the ages of 18 and 30 years old in a total guaranteed amount of $323,508.90 including the $15,000.00. Defendants or their insurer will execute

*/////*

a Qualified Assignment and Release document to perfect the assignment of the periodic payment obligation.

7. Defendants shall cause to be issued a settlement check in the amount of $15,000.00 be made under the California Uniform Transfers to Minors Act, California Probate Code §3900 et seq. ("UTMA"), with the following designation and made payable to: "CLAUDIA SILVA, as custodian for M.C. under the California Uniform Transfers to Minors Act." Ms. Silva shall only use UTMA funds for M.C.'s benefit before she reaches age 18, at which time any remaining funds will vest in M.C.'s control and absolute ownership.

8. The court directs the Assignee to purchase the annuity contracts on behalf of the minors as reflected in Exhibit B, C & D from USAA Life Insurance Company, which is rated A++ Superior, as determined by A.M. Best Company, and AA+ Very Strong by S & P ratings service. USAA Life Insurance Company shall act as the Guarantor of the Assignee.

9. The annuity policies shall provide guaranteed payments to the minor Plaintiffs as set forth in Exhibit B, C & D to plaintiffs' motion (ECF Nos. 52-3, 52-4, 52-5).

IT IS SO ORDERED.

DATED: January 7, 2020.

_____
UNITED STATES DISTRICT JUDGE